UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

W.S., an infant, by his father and natural guardian, MAHMOUD SALEH, and MAHMOUD SALEH, Individually,

Plaintiffs,

-against-

THE CITY OF NEW YORK and P.O. JOHN DOES #1 through #10, Individually (the names "John Doe" being fictitious, as the true names are presently unknown),

Defendants.

---------------------------------------------------------------X

Docket No.: 1:26-cv-6082

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

Plaintiffs W.S., an infant, by his father and natural guardian, MAHMOUD SALEH, and MAHMOUD SALEH, individually (collectively, "Plaintiffs"), by their attorneys, JON L. NORINSBERG, ESQ., PLLC, complaining of the Defendants, respectfully allege as follows:

## PRELIMINARY STATEMENT

1. On the evening of July 30, 2026, a New York City police officer, in order to effectuate a stop, deliberately drove an unlit police vehicle directly into the path of a moped carrying Plaintiff W.S. Rather than activate his lights or siren, signal the moped to stop, or simply follow it until it did, the officer accelerated into its path and caused a head-on collision.

2. W.S. was not operating the moped. He was an innocent passenger who had committed no crime and had no control over its speed or direction. The collision threw him violently onto the pavement, knocked him unconscious, and caused a fractured femur requiring surgery and a hematoma to his head.

3. When W.S. regained consciousness, he found himself lying injured on the ground in handcuffs. Although he posed no threat, was incapable of flight, and had done nothing to justify

his detention, the police kept him restrained through his ambulance transport and into the hospital, including while he underwent CT scans. The handcuffs were removed only after the police determined that no criminal charges would be brought against him.

4. What happened to W.S. was not an isolated incident. Before this collision, the City had already received repeated notice that NYPD officers were using police vehicles to block, cut off, strike, and physically intercept riders of mopeds, motorcycles, bicycles, and other two-wheeled vehicles, including through conduct that had resulted in death. Despite that notice, the practice continued.

5. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, and 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 et seq.[1]

## JURISDICTION AND VENUE

6. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

7. This Court has supplemental jurisdiction over Plaintiffs' claims arising under the Administrative Code of the City of New York and under the common law of the State of New York pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), because the events giving rise to Plaintiffs' claims occurred in Queens County, within this District.

[1] Before commencing this action, Plaintiff served a Notice of Claim on the City of New York through the Office of the New York City Comptroller pursuant to General Municipal Law § 50-e. Plaintiff anticipates amending this Complaint to add claims under New York State law once the hearing required by General Municipal Law § 50-h has been held and the statutory waiting period has run.

## THE PARTIES

9. Plaintiff W.S. is a natural person and an infant, born March 6, 2012, and at all times relevant herein was a resident of the County of Queens, City and State of New York. Pursuant to Fed. R. Civ. P. 17(c), W.S. brings this action by and through his father and natural guardian, MAHMOUD SALEH.

10. MAHMOUD SALEH is the father and natural guardian of the infant W.S., and at all times relevant herein was a resident of the County of Queens, City and State of New York. MAHMOUD SALEH brings this action both in his representative capacity on behalf of his infant son, W.S., pursuant to Fed. R. Civ. P. 17(c), and individually, in his own right, to recover for his own derivative losses. Except where otherwise specified, references herein to "Plaintiff" refer to Plaintiff W.S.

11. Defendants P.O. JOHN DOES #1 through #10, shield numbers presently unknown, were at all times relevant herein police officers, employees, and agents of the New York City Police Department, and were at all times relevant herein assigned to the NYPD 115th Precinct or another NYPD command operating within the confines of the 115th Precinct, including the Community Response Team ("CRT") assigned to Patrol Borough Queens North.

12. Defendants P.O. JOHN DOES #1 through #10 are being sued in their individual capacities.

13. Defendant P.O. JOHN DOE #1 was the operator of the NYPD vehicle that deliberately struck the moped on which Plaintiff was riding.

14. Defendant P.O. JOHN DOE #2 was the officer who placed Plaintiff in handcuffs and/or caused Plaintiff to remain in handcuffs following the collision.

15. Defendants P.O. JOHN DOES #3 through #10 participated in, directed, supervised, and/or were present for and failed to intervene in the unlawful conduct described herein.

16. The names "JOHN DOE" are fictitious, the true names of the individual Defendants being presently unknown to Plaintiff. Plaintiff will seek leave to amend this Complaint to substitute the true names of the individual Defendants once ascertained through discovery.

17. At all times relevant herein, the individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees, and officers of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the New York City Police Department at all times relevant herein, with the power and authority vested in them as officers, agents, and employees of the New York City Police Department and incidental to the lawful pursuit of their duties as officers, employees, and agents of the New York City Police Department.

18. At all times relevant herein, the individual Defendants were "covered individuals" within the meaning of N.Y.C. Admin. Code § 8-801, and Defendant THE CITY OF NEW YORK was their employer within the meaning of that chapter.

19. At all times relevant herein, Defendants acted jointly and in concert with one another.

20. Defendant THE CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

21. Plaintiff's supplemental claims under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 et seq., are not subject to the notice-of-claim requirement of General Municipal Law § 50-e or the hearing requirement of General Municipal Law § 50-h. Pursuant to N.Y.C. Admin. Code § 8-803(d), exhaustion of administrative remedies is not required for a person aggrieved to commence a civil action under that chapter, and the remedies provided by that chapter are in addition to any other remedies that may be provided under common law or any other law or rule.

## COMPLIANCE WITH CONDITIONS PRECEDENT

22. On September 21, 2026, and within ninety (90) days after the claims herein arose, a Notice of Claim on behalf of the infant Plaintiff W.S. was duly served upon Defendant THE CITY OF NEW YORK through the electronic claim-filing system of the Office of the Comptroller of the City of New York, in compliance with General Municipal Law § 50-e.

23. On September 23, 2026, and within ninety (90) days after the claims herein arose, a separate Notice of Claim on behalf of Plaintiff MAHMOUD SALEH, individually, was duly served upon Defendant THE CITY OF NEW YORK through the electronic claim-filing system of the Office of the Comptroller of the City of New York, in compliance with General Municipal Law § 50-e.

24. At least thirty (30) days have elapsed since the service of each of the foregoing Notices of Claim upon Defendant THE CITY OF NEW YORK, and adjustment or payment thereof has been neglected or refused.

25. This action is commenced within one (1) year and ninety (90) days after the happening of the event upon which Plaintiffs' state-law claims are based.

## STATEMENT OF FACTS

***Defendant P.O. JOHN DOE #1 Deliberately Strikes the Moped on Which Plaintiff Is Riding to Effectuate a Stop***

26. On July 30, 2026, at approximately 7:30 p.m., Plaintiff W.S., then fourteen years old, was riding as a passenger on a moped operated by another individual on or near Northern Boulevard in Corona, Queens, when Defendant officers converged on the moped. Defendant P.O. JOHN DOE #1 deliberately used his police vehicle to cut across the moped's path and cause a collision, after which Plaintiff was seized, handcuffed, and detained without probable cause or legal justification.

27. The moped on which Plaintiff was riding was traveling in the company of several other mopeds.

28. At the aforesaid time, NYPD officers, including officers assigned to the 115th Precinct and/or the Community Response Team assigned to Patrol Borough Queens North, were engaged in a coordinated enforcement effort directed at the operators of mopeds traveling in the vicinity of Northern Boulevard in Corona, Queens. In the course of that effort, the officers had already stopped and were in the process of arresting at least one moped operator at a location along the group's route.

29. At all times relevant herein, Plaintiff was a passenger on the moped and exercised no control whatsoever over the operation, speed, or direction of the moped.

30. The Defendant officers sought to stop the moped on which Plaintiff was riding and to detain its operator. The officers' law-enforcement interest, to the extent they had any, was in the operator of the moped and the manner in which the moped was being operated. The officers had no law-enforcement interest in Plaintiff, a fourteen-year-old passenger.

31. The officers' interest in the operator, and not in Plaintiff, is confirmed by what followed: the operator of the moped was subsequently charged with a criminal offense arising out of his operation of the moped, while no charges of any kind were ever brought against Plaintiff.

32. As the moped approached the intersection of 101st Street and Northern Boulevard, Plaintiff looked behind him and observed an NYPD vehicle approximately two blocks behind the moped, following in the same direction of travel. That NYPD vehicle was not in close proximity to the moped and was not in a position to stop it.

33. Defendant P.O. JOHN DOE #1, operating a second NYPD vehicle positioned ahead of the moped, observed the moped on which Plaintiff was riding approaching along Northern Boulevard and determined to stop it and detain its operator.

34. Rather than signal the moped to pull over with lights and sirens, or follow it until it stopped, Defendant P.O. JOHN DOE #1 elected to force the moped to a stop by driving his police vehicle directly into its path.

35. Thereafter, suddenly and without any warning whatsoever to the moped's occupants, Defendant P.O. JOHN DOE #1, in order to effectuate a stop, deliberately accelerated his NYPD vehicle, which Plaintiff had not previously observed, and cut across and into the path of travel of the moped on which Plaintiff was riding, striking the moped head-on.

36. At the time of the collision, the NYPD vehicle operated by Defendant P.O. JOHN DOE #1 was being operated without its headlights activated.

37. Defendant P.O. JOHN DOE #1 never employed any lights, sirens, or other signal to indicate that he wanted the moped to stop before driving his vehicle into it.

38. Defendant P.O. JOHN DOE #1 intentionally and deliberately accelerated and steered the NYPD vehicle directly into the path of travel of the moped for the express purpose of

blocking the moped, terminating its movement by physical impact, and stopping and detaining its operator and, necessarily, its passenger, Plaintiff, as part of the coordinated effort to stop and detain moped operators in the area. Defendant P.O. JOHN DOE #1 knew, or plainly should have known, that the moped carried a passenger in addition to its operator.

39. The freedom of movement of Plaintiff was terminated by means intentionally applied by Defendant P.O. JOHN DOE #1, namely, the deliberate interposition of a police vehicle into the moped's path of travel. The moped was stopped by the very instrumentality that Defendant P.O. JOHN DOE #1 set in motion in order to stop it.

40. Defendant P.O. JOHN DOE #1 used the NYPD vehicle itself as an instrument of force against a fourteen-year-old passenger riding on a moped.

41. At no time did Plaintiff commit any crime, and Defendants had no individualized basis to suspect Plaintiff, a fourteen-year-old passenger who exercised no control over the operation, speed, or direction of the moped, of having committed any crime. Nothing Plaintiff did justified the use of force employed against him.

42. Whatever lawful interest Defendants may have had in stopping the moped or issuing a summons to its operator was, at most, an interest in enforcing minor traffic regulations. That interest could not justify intentionally using a police vehicle to cause a collision with a moped occupied by a child passenger who was suspected of no crime and exercised no control over the vehicle.

43. No legitimate law-enforcement objective justified intentionally driving a police vehicle into the path of a moped occupied by a child. No reasonable officer could regard the deliberate use of a police vehicle to force a collision with a moped as a lawful or proportionate means of accomplishing a traffic stop under these circumstances.

44. Defendant P.O. JOHN DOE #1 acted intentionally and with reckless disregard for an obvious and extreme risk to Plaintiff's safety. Any reasonable officer would understand that deliberately forcing a collision between a police vehicle and an occupied moped creates a substantial risk of death or grievous bodily injury. Defendant P.O. JOHN DOE #1 nevertheless chose that method of force.

45. Defendant P.O. JOHN DOE #1's conduct violated not only the NYPD's own written policies, but also the training provided to NYPD officers and generally accepted police practices and procedures. The NYPD Patrol Guide procedure governing vehicle pursuits in effect at all relevant times expressly prohibited officers from ramming a pursued vehicle, from placing a moving Department vehicle in a position to be struck by a pursued vehicle, and from driving alongside a pursued vehicle, and prohibited the use of roadblocks absent specific supervisory direction. The NYPD's revised vehicle-pursuit policy, announced January 15, 2025 and effective February 1, 2025, further prohibited pursuits where the most serious suspected offense was a traffic infraction, violation, or non-violent misdemeanor, and required active supervisory monitoring of any pursuit.

46. Those written restrictions are not idiosyncratic to the NYPD. They reflect generally accepted police practices and procedures, and the training provided to police officers throughout the United States, which uniformly recognize that a motor vehicle is a deadly instrument; that using a police vehicle to ram, block, cut off, or otherwise physically stop a motorcycle, moped, bicycle, or other two-wheeled vehicle exposes its riders to a high probability of death or serious physical injury because they have no protective enclosure; and that such tactics are therefore prohibited absent an imminent threat of death or serious physical injury to officers or the public. No such threat existed here.

47. Every reasonable police officer, including Defendant P.O. JOHN DOE #1, knew or should have known from his training and from generally accepted police practices and procedures that deliberately driving a police vehicle into the path of a moped in order to stop it for traffic infractions was an unreasonable and unjustifiable use of deadly force. Defendant P.O. JOHN DOE #1's decision to accelerate an unlit police vehicle directly across the moped's path of travel, in order to stop a moped suspected at most of traffic infractions, violated each of these directives, his training, and generally accepted police practices and procedures.

48. As a direct and proximate result of Defendant P.O. JOHN DOE #1's deliberate vehicular interception, Plaintiff was thrown from the moped and onto the pavement.

49. The impact rendered Plaintiff unconscious. Plaintiff has no recollection of the events immediately following the impact.

***Defendants Handcuff and Detain a Seriously Injured Fourteen-Year-Old Child***

50. When Plaintiff regained awareness, he was lying on his back on the ground in excruciating pain with handcuffs placed on his wrists.

51. A police officer, Defendant P.O. JOHN DOE #2, was present and was interrogating Plaintiff as Plaintiff lay handcuffed on the ground.

52. At the time Plaintiff was placed in handcuffs, Plaintiff was a severely injured fourteen-year-old child who was lying on the ground with, among other injuries, a fractured right femur and a head injury, having just been deliberately struck by a police car and rendered unconscious.

53. At the time Plaintiff was placed in handcuffs, Plaintiff posed no threat to any person, was not resisting, was not attempting to flee, and was physically incapable of flight.

54. Plaintiff did not resist in any manner.

55. Defendants handcuffed Plaintiff despite the fact that he was seriously injured, had just regained consciousness, posed no threat, was not resisting, and was physically incapable of flight. Under those circumstances, the continued use of restraints served no legitimate safety or law-enforcement purpose.

56. At no point did the Defendant officers recover any weapons, drugs, or other contraband from Plaintiff or from any location in Plaintiff's possession, custody, or control.

57. Defendant P.O. JOHN DOE #2 thereafter wrapped Plaintiff's injured leg and assisted in moving Plaintiff onto a stretcher and into an ambulance, while Plaintiff remained in handcuffs.

58. Plaintiff was transported by ambulance to Harlem Hospital Center, where Plaintiff's mother met him.

59. Because of the severity of his injuries, Plaintiff was thereafter transferred to Bellevue Hospital Center.

60. The same NYPD officer remained with Plaintiff at both Harlem Hospital Center and Bellevue Hospital Center.

61. Plaintiff remained in handcuffs and in the custody and control of Defendants through his ambulance transport and initial hospitalization, including while he underwent diagnostic CT imaging.

62. The handcuffs were removed only after the CT scans were completed, at which point Plaintiff was informed that no criminal charges would be brought against him.

63. No explanation was ever provided to Plaintiff, then a fourteen-year-old child, as to why he had been placed in handcuffs or kept in police custody while receiving emergency medical treatment.

64. No criminal charges were ever filed against Plaintiff arising out of the events of July 30, 2026.

65. At no time relevant herein did Plaintiff commit a crime or violate the law in any way, nor did the Defendant officers have an objective reason to accuse Plaintiff of committing a crime.

66. Plaintiff was confined by Defendants, was conscious of that confinement, did not consent to that confinement, and the confinement was not otherwise privileged.

67. Defendants had no probable cause or lawful basis to arrest, detain, or handcuff Plaintiff, and no probable cause or lawful basis to use the force that they used against him.

***Plaintiff Suffers Severe and Permanent Injuries***

68. As a direct and proximate result of Defendants' unlawful actions, Plaintiff sustained severe and permanent personal injuries, including but not limited to a fracture of the right femur requiring surgical repair, which surgery was performed on or about July 31, 2026, a hematoma to the head, and the residual and permanent effects of those injuries.

69. Plaintiff was transported by ambulance and treated in the emergency room on July 30, 2026, was hospitalized at Harlem Hospital Center and thereafter at Bellevue Hospital Center, and remained hospitalized because of the severity of his injuries for more than seven weeks, through at least September 21, 2026, with an anticipated transfer to a rehabilitation facility for continued treatment and recovery.

70. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer severe and permanent physical pain and suffering, mental anguish, emotional distress, psychological trauma, physical impairment and disability, loss of enjoyment of

life, and has incurred and will continue to incur expenses for medical care, hospitalization, surgery, rehabilitation, and related services.

71. Plaintiff's injuries are severe and permanent in nature. Given Plaintiff's age at the time of the incident, these injuries have disrupted and will continue to disrupt Plaintiff's education, physical development, and ordinary activities of childhood and adolescence, and Plaintiff will bear the physical and psychological consequences of Defendants' conduct for the rest of his life.

72. Every Defendant officer who directly participated in the constitutional violations is responsible for the resulting injuries. Any officer who had a realistic opportunity to prevent or terminate the unlawful conduct and failed to do so is likewise liable for that failure to intervene.

73. To the extent any Defendant officer had advance knowledge of and a realistic opportunity to prevent the vehicular seizure, that officer failed to intervene. Independently, officers who observed Plaintiff after the collision—severely injured, handcuffed, and under police control—had an opportunity to intervene in the continued use of force, restraint, and detention but failed to do so.

74. The conduct of the individual Defendants was intentional, willful, wanton, malicious, and undertaken with reckless and callous indifference to Plaintiff's constitutional rights and physical safety, warranting an award of punitive damages against the individual Defendants.

**FIRST CAUSE OF ACTION**
**(Excessive Force Under 42 U.S.C. § 1983)**

75. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

76. All of the aforementioned acts of Defendants were carried out under color of state law.

77. Defendant P.O. JOHN DOE #1 seized Plaintiff within the meaning of the Fourth Amendment by intentionally interposing an NYPD vehicle in the path of the moped on which Plaintiff was riding, thereby terminating Plaintiff's freedom of movement through means intentionally applied.

78. The force used against Plaintiff was objectively unreasonable under the totality of the circumstances. Defendants deliberately used a police vehicle to physically intercept a moped occupied by a fourteen-year-old passenger, causing a collision that threw him to the pavement and rendered him unconscious, and thereafter handcuffed and restrained him despite his serious injuries and inability to flee.

79. Plaintiff, a passenger, had committed no crime, was suspected of no crime, and posed no threat to the safety of the officers or others. At the time he was handcuffed, Plaintiff was not resisting, was not attempting to flee, and was physically incapable of fleeing.

80. Deliberately using a motor vehicle to strike or force a collision with an occupied moped constitutes force capable of causing death or serious bodily injury. Under the circumstances alleged here, no reasonable officer could believe that such force was justified.

81. Defendants' use of force violated Plaintiff's rights under the Fourth Amendment to the United States Constitution.

82. As a result of the foregoing, Plaintiff sustained, inter alia, severe pain and suffering, severe and permanent bodily injuries, emotional distress, humiliation, and the deprivation of his constitutional rights.

## SECOND CAUSE OF ACTION
### (Unlawful Seizure and False Arrest Under 42 U.S.C. § 1983)

83. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

84. All of the aforementioned acts of Defendants, their agents, servants, and employees, were carried out under color of state law.

85. Following the initial vehicular seizure, the individual Defendants, while acting in concert and within the scope of their authority, intentionally detained, handcuffed, arrested, and confined Plaintiff without a warrant, without probable cause, without reasonable suspicion that Plaintiff himself had committed any crime, and without any other constitutionally sufficient justification.

86. Plaintiff did not consent to the seizure, detention, or confinement.

87. Plaintiff's seizure and confinement continued through ambulance transport and into his initial hospitalization, including while he underwent diagnostic CT imaging. The detention was unreasonable in its inception, scope, manner, and duration, particularly because Plaintiff was a seriously injured fourteen-year-old receiving emergency medical care and was neither resisting nor capable of flight.

88. The foregoing acts deprived Plaintiff of the rights, privileges, and immunities guaranteed by the Fourth Amendment to the Constitution of the United States, including his right to be free from unreasonable seizure and arrest without probable cause, in violation of 42 U.S.C. § 1983.

89. The acts complained of were carried out by the individual Defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

90. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, physical injuries, emotional distress, embarrassment, humiliation, and the deprivation of his constitutional rights.

**THIRD CAUSE OF ACTION**
**(Substantive Due Process Under 42 U.S.C. § 1983)**
**(Pleaded in the Alternative)**

91. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

92. This cause of action is pleaded in the alternative to the First and Second Causes of Action, in the event it is determined that the collision caused by Defendant P.O. JOHN DOE #1 did not constitute a seizure within the meaning of the Fourth Amendment.

93. Defendant P.O. JOHN DOE #1 deliberately accelerated an unlit police vehicle across the path of a moped occupied by a fourteen-year-old child and caused a head-on collision. If that conduct is determined not to constitute a Fourth Amendment seizure, it nonetheless constituted an arbitrary and conscience-shocking abuse of governmental power under the circumstances alleged.

94. Defendant P.O. JOHN DOE #1 deliberately employed physical impact against the moped and its occupants as the means of accomplishing the stop, notwithstanding the absence of any governmental interest sufficient to justify the infliction of such potentially lethal force upon Plaintiff. To the extent the circumstances permitted actual deliberation before Defendant P.O. JOHN DOE #1 positioned and accelerated his vehicle into the moped's path, his deliberate decision to employ that extraordinarily dangerous tactic despite its obvious risk to Plaintiff's life and bodily integrity was conscience-shocking.

95. Defendant P.O. JOHN DOE #1's conduct deprived Plaintiff of his rights to life, liberty, and bodily integrity without due process of law, in violation of the Fourteenth Amendment to the United States Constitution.

96. As a result of the foregoing, Plaintiff sustained, inter alia, severe pain and suffering, severe and permanent bodily injuries, emotional distress, humiliation, and the deprivation of his constitutional rights.

**<u>FOURTH CAUSE OF ACTION</u>**
**(Failure to Intervene Under 42 U.S.C. § 1983)**

97. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

98. The Defendant police officers had an affirmative duty to intervene to protect the constitutional rights of Plaintiff from being violated by other police officers in their presence.

99. The Defendant police officers violated Plaintiff's constitutional rights in the presence of their police colleagues.

100. The Defendant police officers had reason to know that Plaintiff's constitutional rights were being violated.

101. To the extent any Defendant officer had advance knowledge of and a realistic opportunity to prevent the vehicular seizure, that officer failed to intervene. Independently, the officers who observed Plaintiff after the collision had a realistic opportunity to intervene in the continued handcuffing, restraint, and detention of a gravely injured fourteen-year-old child.

102. Notwithstanding these opportunities, the Defendant police officers failed to intervene to prevent or terminate the violations of Plaintiff's constitutional rights.

103. As a result of the foregoing, Plaintiff sustained, inter alia, severe pain and suffering, severe and permanent bodily injuries, loss of liberty, emotional distress, and the deprivation of his constitutional rights.

## FIFTH CAUSE OF ACTION
**(Municipal Liability Under 42 U.S.C. § 1983)**
**(Unwritten Policy, Pattern and Practice, and Deliberate Indifference)**

104. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

105. The City of New York and the New York City Police Department maintained, permitted, tolerated, and acquiesced in an unwritten policy, pattern, practice, and custom pursuant to which NYPD officers used police vehicles as instruments of force to deliberately block, cut off, strike, or otherwise physically intercept mopeds, scooters, motorcycles, bicycles, and similar two-wheeled vehicles in order to bring them to a stop, and pursuant to which officers handcuffed and restrained the injured riders of such vehicles after the collision, notwithstanding that the riders were seriously injured, posed no threat, and were incapable of flight.

106. The repeated occurrence of this distinctive conduct, the City's notice of substantially similar prior allegations and incidents, and its failure to prevent recurrence support the inference that the use of police vehicles to forcibly intercept two-wheeled vehicles had become an accepted and tolerated unwritten practice within the NYPD, notwithstanding formal policies and directives governing vehicle pursuits and the use of force.

***Official Findings Confirm the Practice and the City's Notice***

107. The City had direct notice of this practice from its own investigative findings and those of the New York State Attorney General. On May 28, 2023, twelve NYPD officers assigned to the Manhattan North Community Response Team, traveling in four unmarked police cars, encountered a group of dirt-bike and ATV riders on the University Heights Bridge. Two of the officers turned their unmarked vehicles into the opposing lanes of traffic in an effort to stop the riders. Samuel Williams, the lead rider, collided with the second police vehicle, was thrown over

its hood, and died of his injuries the following day. Officers then handcuffed Williams as he lay gravely injured on the hood of the police car.

108. On June 8, 2026, the Attorney General's Office of Special Investigation issued its report on Williams's death. The report found that the actions of the officers who drove their cars into oncoming traffic were "deeply troubling," that those actions "presented a clear risk to life and limb," and that "in fact they caused the death of Samuel Williams." The report found no evidence that the NYPD had ever permitted such maneuvers or trained its officers to perform them. Critically, the CRT supervising lieutenant told investigators that his team had successfully used this vehicle-blocking tactic against dirt-bike and ATV riders in the past, and that the officers had not been trained by the NYPD to perform it. See N.Y. State Office of the Attorney General, Office of Special Investigation, Report on the Investigation into the Death of Samuel Williams (June 8, 2026).

109. The Attorney General's report further documented that the NYPD Patrol Guide governing vehicle pursuits expressly prohibited officers from ramming a pursued vehicle, placing a moving Department vehicle in a position to be struck by the pursued vehicle, and driving alongside the pursued vehicle, and prohibited roadblocks absent specific supervisory direction. The supervising lieutenant's statement confirmed that, in actual field practice, CRT officers had repeatedly employed a vehicle-blocking tactic against two-wheeled riders in direct contravention of those written rules, of their training, and of generally accepted police practices and procedures.

110. The NYPD's own Force Investigation Division likewise concluded, at least in part, that the supervising CRT lieutenant violated NYPD guidelines in the Williams incident; those findings were approved by Police Commissioner Jessica Tisch. The City thus possessed, well

before July 30, 2026, an internal determination that its officers were using police vehicles to block and intercept two-wheeled riders in violation of Department policy, resulting in death.

111. The Williams incident was not isolated. As the Department of Investigation later documented, NYPD vehicle pursuits increased by nearly 600% in the first quarter of 2023 as compared with the same period in 2022.

112. In November 2024, the New York City Department of Investigation's Office of the Inspector General for the NYPD issued a Review of NYPD's Community Response Team. The Inspector General found that CRT—created in July 2022 to address, among other things, unregistered dirt bikes, ATVs, and mopeds—had grown to approximately 165 members with a team in every Patrol Borough, yet had operated for more than two years without written policies, procedures, or operational guides, without any required training for members joining or serving in the unit, and without selection criteria. See NYC DOI, OIG-NYPD, A Review of NYPD's Community Response Team (Nov. 2024). The Inspector General warned that this lack of governance "risks non-compliance with the law, ethical breaches, and negative policing outcomes."

113. On January 15, 2025, the NYPD publicly acknowledged the dangers of its vehicular enforcement practices when it announced a revised vehicle-pursuit policy, effective February 1, 2025, prohibiting pursuits where the most serious suspected offense was a traffic infraction, violation, or non-violent misdemeanor. In announcing the policy, the NYPD disclosed for the first time that there had been 2,278 vehicle pursuits in 2024, that approximately 25% of those pursuits resulted in a collision, property damage, or physical harm, and that 67% of pursuits arose from fled car stops, many of which would no longer be authorized. Independent reporting has identified at least seventeen deaths and more than 600 injuries connected to NYPD vehicle pursuits since

late 2022, and monthly pursuits rose from approximately 15 in January 2022 to approximately 227 by January 2024. Despite these acknowledgments, the City elevated the principal architect of the aggressive pursuit expansion to Chief of Department, and the practice of using police vehicles to intercept two-wheeled riders continued.

***Judicial Findings and Prior Claims Confirm the Pattern***

114. The City had further notice through Rodriguez v. City of New York, 594 F. Supp. 3d 534 (E.D.N.Y. 2022) (Gershon, J.), No. 16-cv-5861, arising from an August 13, 2015 incident in Queens near 43rd Avenue and 104th Street—approximately one mile from the site of Plaintiff's collision. NYPD officers pursuing a bicyclist in an unmarked police vehicle denied striking him, but one officer told the Civilian Complaint Review Board that the officers were alongside the bicyclist and "cut him off," after which the bicyclist lost control and fell. The officers immediately handcuffed the injured rider. Judge Gershon denied summary judgment on the Fourth Amendment excessive-force claim, holding that a jury could conclude that the officer intentionally used the police vehicle to block the bicyclist's path of travel or to strike the bicycle in order to stop him, either of which would constitute a seizure.

115. In May 2023, video widely circulated in the news media showed a marked NYPD vehicle on the Van Wyck Expressway in Queens swerving repeatedly toward a moped rider in an effort to strike him or force him off the roadway, without lights, sirens, or any instruction to stop. The NYPD acknowledged the incident, placed it under internal review, and suspended the officer in June 2023. In the same month, NYPD officers in an SUV pursued a moped rider for approximately two miles along the Bay Ridge waterfront greenway in Brooklyn until he crashed into a pillar; that incident, too, was placed under review.

116. In Justiniano v. City of New York, Index No. 158997/2023 (Sup. Ct. N.Y. Cnty.), plaintiff Jonathan Justiniano alleged that on September 30, 2022, NYPD officers operating an unmarked police vehicle deliberately struck his moped from behind in order to stop him and question him regarding ownership of the moped, without first activating lights or sirens, causing him to be thrown from the moped and to sustain serious physical injuries, and that the officers thereafter handcuffed him while he lay bleeding and disoriented, arrested him, and detained him.

117. In Davis v. City of New York (S.D.N.Y., filed October 2025), plaintiff Delonny Davis alleged that on August 28, 2023, officers of the NYPD Community Response Team, operating an unmarked police vehicle, swerved from the middle lane of East 2nd Street in Manhattan into a bike lane and struck him as he rode a moped, throwing him into the air; that the officers then drafted a criminal complaint falsely asserting that the moped had crashed into a police vehicle "attempting to avoid the collision," an account contradicted by surveillance video; and that NYPD executives, including the Chief of Department and the Deputy Commissioner of Operations, implemented a policy encouraging officers to use their patrol cars as instruments of force even for low-level traffic infractions. The Davis complaint further alleged that from January through June 2023 alone there were 625 recorded NYPD vehicle pursuits, more than in the previous five years combined.

118. In Bradley v. City of New York, et al., Index No. 705691/2024 (Sup. Ct. Queens Cnty.), commenced in 2024 and currently pending before the Hon. Joseph J. Esposito, plaintiff Matthew Bradley alleged that NYPD officers deliberately struck his moped from behind with an unmarked police vehicle for the purpose of bringing him to a stop, without first activating lights or sirens, causing him to be thrown from the moped and seriously injured before being handcuffed and detained.

***The City Is Deliberately Indifferent***

119. Taken together, the Attorney General's findings in the Williams investigation, the NYPD's own Force Investigation Division determination, the Inspector General's findings concerning CRT, the NYPD's pursuit-policy disclosures, the judicial findings in Rodriguez, the Van Wyck and Bay Ridge incidents, and the Justiniano, Bradley, and Davis claims supplied repeated and escalating notice of a distinctive and dangerous practice: officers using police vehicles themselves as instruments of force to block, cut off, strike, or physically intercept persons traveling on vulnerable two-wheeled vehicles, and then handcuffing the injured riders. Despite that notice, the City failed to take effective corrective action sufficient to stop the practice, ensure adequate training and supervision, or impose meaningful discipline when officers employed such tactics. That continued inaction constituted deliberate indifference, acquiescence, and tacit authorization.

120. The recurrence of substantially similar conduct after repeated notice—culminating in Defendant P.O. JOHN DOE #1's deliberate interception of the moped carrying Plaintiff on July 30, 2026, less than two months after the Attorney General publicly found that a substantially similar tactic had caused Samuel Williams's death—supports the inference that this unwritten practice was known and tolerated in actual NYPD operations despite formal written restrictions, and that the practice was a moving force behind the violation of Plaintiff's constitutional rights and his injuries.

121. The City's failure to train, supervise, and discipline its officers concerning the use of police vehicles to stop two-wheeled vehicles, and concerning the handcuffing and restraint of seriously injured persons who pose no threat, likewise in conformity with the NYPD's own written directives and generally accepted police practices and procedures, likewise reflected deliberate

indifference to the obvious consequences of that failure, as the need for such training and supervision was plainly obvious in light of the foregoing incidents and findings.

**SIXTH CAUSE OF ACTION**
**(Individual Defendant Officers' Violation of Plaintiff's AC § 8-802 Rights)**

122. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

123. The acts of the Defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

124. The Defendant officers are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-801, in that they are employees of the New York City Police Department.

125. The acts of the Defendant officers caused Plaintiff to be deprived of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

126. The Defendant officers, while acting under color of law, unlawfully seized, detained, handcuffed, and subjected Plaintiff to excessive force, including but not limited to driving an NYPD vehicle head-on into the moped on which Plaintiff was riding, and thereafter handcuffing and restraining Plaintiff while he lay severely injured on the ground and while he received emergency medical treatment, and further caused Plaintiff to be detained without probable cause or lawful justification.

127. Pursuant to N.Y.C. Admin. Code § 8-803, the Defendant officers are liable to Plaintiff, as a person aggrieved, for legal, equitable, or any other appropriate relief.

128. By reason of the acts and omissions of Defendants described above, Plaintiff has endured severe and permanent physical, mental, and emotional injuries and was otherwise damaged and injured.

**SEVENTH CAUSE OF ACTION**
**(Individual Defendant Officers' Failure to Intervene in Violation of Plaintiff's AC § 8-802 Rights)**

129. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

130. The acts of the Defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

131. The Defendant officers had a duty to protect Plaintiff from violations of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

132. Those Defendants who did not personally strike the moped on which Plaintiff was riding or personally restrain Plaintiff, but who were present when other officers violated Plaintiff's AC § 8-802 rights against unreasonable search and seizure and excessive force, had an affirmative duty to intervene on behalf of Plaintiff, whose rights were being violated in their presence by other officers.

133. To the extent any Defendant had advance knowledge of and a realistic opportunity to prevent the vehicular seizure, that Defendant failed to intervene. Independently, Defendants

who observed Plaintiff after the collision had a realistic opportunity to intervene in the continued handcuffing, restraint, and detention of a gravely injured fourteen-year-old child.

134. Defendants failed to intervene to prevent the unlawful conduct described herein, thereby failing in their duty to intervene to protect Plaintiff from the violation of his rights.

135. By reason of the acts and omissions of Defendants described above, Plaintiff has endured severe and permanent physical, mental, and emotional injuries and was otherwise damaged and injured.

## EIGHTH CAUSE OF ACTION
**(City-Employer's Liability for Defendant Officers' Violation of Plaintiff's AC § 8-802 Rights)**

136. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

137. The Defendant officers are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-801, in that they are employees of the New York City Police Department.

138. The City of New York, as the employer of the covered individual Defendant officers, is liable to Plaintiff for the wrongdoing of the covered individual Defendant officers.

139. The acts of the Defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

140. The acts of the Defendant officers caused Plaintiff to be deprived of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

141. The Defendant officers, while acting under color of law, unlawfully seized, detained, handcuffed, and subjected Plaintiff to excessive force, including but not limited to driving an NYPD vehicle head-on into the moped on which Plaintiff was riding, and thereafter handcuffing and restraining Plaintiff while he lay severely injured on the ground and while he received emergency medical treatment, and further caused Plaintiff to be detained without probable cause or lawful justification.

142. By reason of the acts and omissions of Defendants described above, Plaintiff has endured severe and permanent physical, mental, and emotional injuries and was otherwise damaged and injured.

## NINTH CAUSE OF ACTION
**(City-Employer's Liability for Defendant Officers' Failure to Intervene in Violation of Plaintiff's AC § 8-802 Rights)**

143. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

144. The Defendant officers are "covered individuals," as defined in 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-801, in that they are employees of the New York City Police Department.

145. The City of New York, as the employer of the covered individual Defendant officers, is liable to Plaintiff for the wrongdoing of the covered individual Defendant officers.

146. The acts of the Defendant officers constituted conduct under color of any law, ordinance, rule, regulation, custom, or usage.

147. The Defendant officers had a duty to protect Plaintiff from violations of his rights under 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code § 8-802, to wit: to be secure in his person, house, papers, and effects against unreasonable searches and seizures, and to be secure

against the use of excessive force regardless of whether such force is used in connection with a search or seizure.

148. Those Defendants who did not personally strike the moped on which Plaintiff was riding or personally restrain Plaintiff, but who were present when other officers violated Plaintiff's AC § 8-802 rights against unreasonable search and seizure and excessive force, had an affirmative duty to intervene on behalf of Plaintiff, whose rights were being violated in their presence by other officers.

149. To the extent any Defendant had advance knowledge of and a realistic opportunity to prevent the vehicular seizure, that Defendant failed to intervene. Independently, Defendants who observed Plaintiff after the collision failed to intervene in the continued handcuffing, restraint, and detention of a gravely injured fourteen-year-old child, thereby failing in their duty to protect Plaintiff from violations of his rights.

150. By reason of the acts and omissions of Defendants described above, Plaintiff has endured severe and permanent physical, mental, and emotional injuries and was otherwise damaged and injured.

## TENTH CAUSE OF ACTION
**(Negligent and Reckless Operation of a Motor Vehicle Under New York State Law)**

151. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

152. At all times relevant herein, Defendant THE CITY OF NEW YORK owned the NYPD vehicle operated by Defendant P.O. JOHN DOE #1, and that vehicle was operated by Defendant P.O. JOHN DOE #1 with the knowledge, permission, and consent of Defendant THE CITY OF NEW YORK and within the course and scope of his employment.

153. Defendant P.O. JOHN DOE #1 owed Plaintiff a duty to operate the NYPD vehicle with reasonable care and in accordance with the Vehicle and Traffic Law of the State of New York, the rules, regulations, policies, and training of the New York City Police Department, and generally accepted police practices and procedures.

154. Defendant P.O. JOHN DOE #1 breached that duty by, among other things, accelerating an unlit police vehicle directly across and into the path of travel of an occupied moped; failing to activate the vehicle's headlights, emergency lights, or siren; failing to give any warning to the moped's occupants; failing to keep a proper lookout; failing to yield the right of way; operating the vehicle at a rate of speed excessive under the circumstances then and there existing; using the vehicle as an instrument of force against an occupied moped carrying a child passenger; and otherwise operating the vehicle carelessly, negligently, recklessly, and in violation of the Vehicle and Traffic Law and of Department policy and training.

155. To the extent that the NYPD vehicle operated by Defendant P.O. JOHN DOE #1 was an authorized emergency vehicle involved in an emergency operation within the meaning of Vehicle and Traffic Law §§ 101, 114-b, and 1104, and to the extent that his injury-causing conduct consisted of conduct exempted from the rules of the road by Vehicle and Traffic Law § 1104(b), Defendant P.O. JOHN DOE #1 acted with reckless disregard for the safety of others within the meaning of Vehicle and Traffic Law § 1104(e). He intentionally committed an act of an unreasonable character in disregard of a known and obvious risk so great as to make it highly probable that harm would follow, namely, deliberately driving an unlit police vehicle into the path of an occupied moped in order to bring it to a stop by physical impact.

156. In the alternative, the injury-causing conduct of Defendant P.O. JOHN DOE #1 did not consist of conduct exempted from the rules of the road by Vehicle and Traffic Law § 1104(b), and his conduct is therefore governed by the principles of ordinary negligence.

157. Defendant THE CITY OF NEW YORK is vicariously liable for the acts and omissions of Defendant P.O. JOHN DOE #1 and of the other Defendant officers under the doctrine of respondeat superior, they having acted at all relevant times as its employees, within the scope of their employment, and in furtherance of the business of their employer.

158. As a direct and proximate result of the foregoing, Plaintiff sustained severe and permanent personal injuries, conscious pain and suffering, mental anguish, emotional distress, physical impairment and disability, loss of enjoyment of life, and incurred and will continue to incur expenses for medical care, hospitalization, surgery, rehabilitation, and related services.

## ELEVENTH CAUSE OF ACTION
**(Assault and Battery Under New York State Law)**

159. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

160. By deliberately accelerating an NYPD vehicle across and into the path of travel of the moped on which Plaintiff was riding, the Defendant officers intentionally placed Plaintiff in imminent apprehension of harmful and offensive bodily contact.

161. By causing the NYPD vehicle to strike the moped on which Plaintiff was riding, and by thereafter seizing, handcuffing, and physically restraining Plaintiff while he lay severely injured on the ground, during his ambulance transport, and while he received emergency medical treatment, the Defendant officers intentionally made harmful and offensive bodily contact with Plaintiff.

162. Plaintiff did not consent to that contact, and the contact was not otherwise privileged. The force used against Plaintiff was excessive, unnecessary, and unreasonable under the circumstances.

163. The Defendant officers committed the foregoing acts while acting as employees of Defendant THE CITY OF NEW YORK and within the scope of their employment, and Defendant THE CITY OF NEW YORK is therefore vicariously liable for those acts under the doctrine of respondeat superior.

164. As a direct and proximate result of the foregoing, Plaintiff sustained severe and permanent personal injuries, conscious pain and suffering, mental anguish, emotional distress, humiliation, physical impairment and disability, and was otherwise damaged and injured.

**TWELFTH CAUSE OF ACTION**
**(False Arrest and False Imprisonment Under New York State Law)**

165. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

166. The Defendant officers intentionally confined Plaintiff by seizing him, placing him in handcuffs, and detaining him at the scene of the collision, throughout his ambulance transport, and at Harlem Hospital Center and Bellevue Hospital Center, including while he underwent diagnostic CT imaging.

167. Plaintiff was conscious of that confinement and did not consent to it.

168. The confinement was not otherwise privileged. Defendants lacked a warrant, probable cause, reasonable suspicion, or any other lawful basis to arrest, detain, handcuff, or confine Plaintiff, who had committed no crime, who was suspected of no crime, and against whom no criminal charges were ever filed.

169. The Defendant officers committed the foregoing acts while acting as employees of Defendant THE CITY OF NEW YORK and within the scope of their employment, and Defendant THE CITY OF NEW YORK is therefore vicariously liable for those acts under the doctrine of respondeat superior.

170. As a direct and proximate result of the foregoing, Plaintiff suffered loss of liberty, physical injuries, conscious pain and suffering, emotional distress, embarrassment, and humiliation, and was otherwise damaged and injured.

**THIRTEENTH CAUSE OF ACTION**
**(Negligent Hiring, Training, Supervision, Retention and Discipline Under New York State Law)**
**(Pleaded in the Alternative Against Defendant The City of New York)**

171. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

172. This cause of action is pleaded in the alternative, to the extent it is determined that any Defendant officer was acting outside the scope of his employment at the time of the conduct alleged herein.

173. Defendant THE CITY OF NEW YORK owed a duty to Plaintiff and to the public to exercise reasonable care in the hiring, training, supervision, retention, and discipline of its police officers.

174. Defendant THE CITY OF NEW YORK knew or should have known, from the investigative findings, judicial findings, prior claims, and incidents described above, of the propensity of NYPD officers, including the Defendant officers, to use police vehicles as instruments of force to block, cut off, strike, and physically intercept mopeds, scooters, motorcycles, bicycles, and similar two-wheeled vehicles, and to handcuff and restrain the seriously injured riders of such vehicles.

175. Notwithstanding that knowledge, Defendant THE CITY OF NEW YORK failed to exercise reasonable care in the hiring, training, supervision, retention, and discipline of the Defendant officers with respect to such conduct, and placed them in a position to cause foreseeable harm of the very kind that Plaintiff suffered.

176. As a direct and proximate result of the foregoing, Plaintiff sustained severe and permanent personal injuries, conscious pain and suffering, mental anguish, emotional distress, loss of liberty, physical impairment and disability, and was otherwise damaged and injured.

**FOURTEENTH CAUSE OF ACTION**
**(Derivative Claim of Plaintiff Mahmoud Saleh,**
**Individually, Under New York State Law)**
**(Against All Defendants)**

177. Plaintiff MAHMOUD SALEH repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs with the same force and effect as if fully set forth at length herein.

178. At all times relevant herein, Plaintiff MAHMOUD SALEH was and is the father of the infant Plaintiff W.S., and W.S. was and remains an unemancipated infant.

179. As the father of the infant Plaintiff, MAHMOUD SALEH is entitled to the services of his infant son during the period of his infancy, and is obligated to provide and pay for his medical, hospital, surgical, and related care and treatment.

180. As a direct and proximate result of the acts and omissions of Defendants set forth above, Plaintiff MAHMOUD SALEH has been deprived of the services of his infant son, W.S., and will continue to be deprived of those services throughout the remainder of the infant Plaintiff's minority.

181. As a further direct and proximate result of the acts and omissions of Defendants set forth above, Plaintiff MAHMOUD SALEH has necessarily incurred and become obligated for,

and will continue to incur and become obligated for, reasonable expenses for medical, hospital, surgical, diagnostic, ambulance, rehabilitative, therapeutic, nursing, pharmaceutical, assistive-device, and related care and treatment necessary in an effort to restore his infant son to health, together with the reasonable value of the custodial care, supervision, assistance, and home nursing services he has rendered and will render to his infant son during his convalescence and rehabilitation.

182. As a further direct and proximate result of the acts and omissions of Defendants set forth above, Plaintiff MAHMOUD SALEH has lost, and will continue to lose, earnings and time from his employment in order to attend to, care for, and accompany his infant son during his hospitalization, surgery, medical appointments, rehabilitation, and convalescence at home, in an amount to be determined upon the trial of this action.

183. By reason of the foregoing, Plaintiff MAHMOUD SALEH has been damaged in an amount to be determined upon the trial of this action.

## JURY DEMAND

184. Plaintiffs hereby demand trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs W.S., an infant, by his father and natural guardian, MAHMOUD SALEH, and MAHMOUD SALEH, individually, demand judgment against the Defendants, jointly and severally, on each cause of action in amounts to be determined upon the trial of this action, inclusive of compensatory damages, punitive damages against the individual Defendants, and attorneys' fees, together with the costs and disbursements of this action, pre-judgment and post-judgment interest, and such other relief as is appropriate under the law; and that Plaintiffs recover the cost of the suit herein, including reasonable attorneys' fees pursuant to 42

U.S.C. § 1988 and 2021 N.Y.C. Local Law No. 48, N.Y.C. Admin. Code §§ 8-801 et seq., and any further relief that the Court deems just and proper.

Dated: New York, New York
September 30, 2026

Yours, etc.

**JON L. NORINSBERG, ESQ., PLLC**

By:______________________________

Jon L. Norinsberg, Esq.
Graham Oxford, Esq.
*Attorneys for Plaintiffs*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 791-5396
Fax No.: (212) 406-6890
jon@norinsberglaw.com
graham@norinsberglaw.com